WILBER F. BEISNER ET AL., APPELLANTS, V. ROBERT L. COCHRAN ET AL., APPELLEES.

293 N. W. 289

FILED JULY 12, 1940. No. 30921.

*Max Kier,* for appellants.

*Walter R. Johnson, Attorney General,* and *Clarence S. Beck, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

CARTER, J.

This is a suit brought by plaintiffs, on behalf of themselves and others similarly situated, to obtain a declaration of the rights, status and legal relations of the parties under sections 60-435 to 60-444, Comp. St. Supp. 1937, as affected by chapter 78, Laws 1939. The defendants are the administrative officers of the state who are charged by law with the enforcement of the statutes in question. The trial court

sustained a general demurrer to the petition and dismissed the action. Plaintiffs have appealed from the adverse judgment entered against them.

Prior to 1937 the statutes of Nebraska provided that motor vehicles should be equipped with adequate brakes and lights. In 1937 a statute was passed requiring resident owners of motor vehicles to procure annual certificates of inspection showing that the brakes, lights and other equipment comply with the statutes of the state and the regulations of the administrative department having charge of the enforcement of the law. The statute provided further that any public garage, by meeting certain requirements, could become an authorized inspection station and make a charge of 25 cents for each complete inspection, of which 20 cents might be retained by it. Comp. St. Supp. 1937, secs. 60-435 to 60-444. The plaintiffs are operators of public garages who made investments in special machinery and equipment and secured sufficient space and personnel to qualify as official inspection stations and thereby became qualified to inspect motor vehicles and to make the statutory charge therefor.

In 1939 the legislature passed a new statute with more rigorous requirements with respect to brake and light equipment, and repealed the provisions of the 1937 act requiring compulsory inspections and authorizing official inspection stations. Laws 1939, ch. 78. It is the contention of plaintiffs, among others, that the repeal statute destroyed the value of their special machinery and equipment in a manner violative of the due process clauses of the state and federal Constitutions and also constituted a taking or damaging of private property for public use without just compensation contrary to constitutional prohibitions.

We think the rule is, that a citizen has no vested right in statutory licenses, permits and privileges. This being true, a license to carry on a particular trade may be recalled by legislative action at any time. No one has a vested right to be protected against consequential injuries arising from a proper exercise of public powers. That the state

under its police power may regulate the use of motor vehicles on the public highways cannot be questioned. Consequently, any incidental damage resulting from a legislative invocation of its police power does not give rise to a right to enjoin the act or to claim compensation from the public. And, likewise, the amendment or repeal of an existing police regulation must necessarily follow the same principle. The applicable rule is well stated in *Mugler v. Kansas,* 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205, as follows: "A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit. Such legislation does not disturb the owner in the control or use of his property for lawful purposes, nor restrict his right to dispose of it, but is only a declaration by the state that its use by any one, for certain forbidden purposes, is prejudicial to the public interests. Nor can legislation of that character come within the Fourteenth Amendment, in any case, unless it is apparent that its real object is not to protect the community, or to promote the general well-being, but, under the guise of police regulation, to deprive the owner of his liberty and property, without due process of law. The power which the states have of prohibiting such use by individuals of their property as will be prejudicial to the health, the morals, or the safety of the public, is not—and, consistently with the existence and safety of organized society, cannot be—burdened with the condition that the state must compensate such individual owners for pecuniary losses they may sustain, by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community. The exercise of the police power by the destruction of property which is itself a public nuisance, or the prohibition of its use in a particular way, whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law. In the one case, a nuisance only is

abated; in the other, unoffending property is taken away from an innocent owner."

The licenses issued to plaintiffs under the 1937 act, permitting them to operate official inspection stations, created no contractual relationship between them and the state. Plaintiffs are presumed to have known that the continued existence of the license was dependent upon the willingness of the legislature to keep the statute creating it in force. The statute authorizing the licensing of official inspection stations and requiring annual inspections of all motor vehicles using the public highways of the state is a proper exercise of the police power of the state and any incidental restraints imposed thereby upon the use of property is not in contravention of the due process clauses. Likewise, the repeal of such police regulation constitutes a proper exercise of legislative power and any incidental damage to property resulting therefrom is not inhibited by the due process clauses, nor does it constitute a taking or damaging of property for public use within the purview of constitutional provisions on that subject. *Marsh & Marsh v. Carmichael,* 136 Neb. 797, 287 N. W. 616.

We concur with plaintiffs' contention that the repeal or amendment of a statute cannot have the effect of destroying vested rights acquired under a former law. But the license or permit granted in the instant case, authorizing the plaintiffs to operate an official inspection station, does not convey a vested right. *Martin v. State,* 23 Neb. 371, 36 N. W. 554; *Effenberger v. Marconnit,* 135 Neb. 558, 283 N. W. 223.

We necessarily conclude that the legislature could lawfully amend or repeal sections 60-435 to 60-444, Comp. St. Supp. 1937, without violating the provisions of the state and federal Constitutions hereinbefore mentioned. Neither are the plaintiffs entitled to redress by injunction or compensation for the damage, if any, caused by the repeal of the designated sections of the former law. 2 Cooley, Constitutional Limitations (8th ed.) 792-796; 11 Am. Jur. 1200, sec. 372. A license or permit granted by the state is

a mere privilege which the legislature can take away at any time. The grantees must rely solely upon the faith of the sovereign grantor for its continuance.

Plaintiffs argue that section 6, ch. 78, Laws 1939, violates section 21, art. I of the Constitution of Nebraska, in that it provides for the taking or damaging of property for public use without just compensation. The questioned part of the section provides: "The chief officer and all members of the division of highway safety and patrol and all other peace officers mentioned in section 1 of this act shall have the power: * * * To require the drivers of motor vehicles to present their vehicles at the nearest inspection station or garage for inspection without charge upon reasonable belief that such motor vehicle is being operated in violation of the statutes of Nebraska pertaining to light and brake equipment or the rules and regulations of the Director of Motor Vehicles pertaining to loads." That this portion of the act is somewhat confused is quite apparent. The power granted to require drivers of motor vehicles to present their vehicles at the nearest inspection station or garage when operated in violation of law is particularly subject to this criticism in view of the fact that subsequent sections of the act abolish official inspection stations. However, we do not feel that the complaint of plaintiffs is warranted. We think the section is subject to more than one interpretation. We quite agree that any attempt on the part of the legislature to require plaintiffs to furnish free inspections would amount to a taking or damaging of their property without just compensation. The act, however, states that the inspection is to be free of charge to the driver of the motor vehicle to be inspected. While the section might be interpreted to mean that the official inspection station or garage was to make the inspection free, yet it can just as well be interpreted to mean that the inspection was to be at the cost of the state, or made by the officers of the state itself. The only requirement appears to be that the vehicle shall be delivered at the nearest inspection station or garage for inspection. It has long been the rule in this state that, where

a statute is subject to more than one construction, one of which would make the act constitutional and the other unconstitutional, the courts are required to adopt the construction which would make the act valid. *Nelsen v. Tilley,* 137 Neb. 327, 289 N. W. 388. Applying this rule, we interpret the portion of the section under consideration to mean that a driver of a motor vehicle, operating it in violation of law, may be required to present it at the nearest inspection station or garage for inspection, either by the officers of the state or by the operators of the inspection station or garage, at the expense of some person other than the driver of the motor vehicle. In any event, we hold that this section does not require the inspection station or garage owner to inspect motor vehicles without compensation. This being true, no constitutional inhibitions have been violated.

Plaintiffs urge that the statute herein described as chapter 78, Laws 1939, violates section 14, art. III of the Nebraska Constitution, in that it contains more than one subject, and that it amends earlier laws without reciting all the sections amended and without repealing all the sections so amended. An examination of the title reveals that the act contains only one general subject—the regulation of motor vehicles. Each part of the statute is germane to this general subject. The statute is clearly an independent act, even if it does amend certain sections and repeal other sections of the 1937 law not recited in the title. An act complete in itself which covers the whole subject to which it relates may properly modify, change or destroy the effect of other statutes without contravening the provisions of the Constitution. *Van Horn v. State,* 46 Neb. 62, 64 N. W. 365; *Mehrens v. Bauman,* 120 Neb. 110, 231 N. W. 701; *State v. Hevelone,* 92 Neb. 748, 139 N. W. 636; *Scott v. Dohrse,* 130 Neb. 847, 266 N. W. 709.

We are of the opinion that the act in question meets constitutional requirements, and that the trial court properly sustained defendants' demurrer to plaintiffs' petition.

AFFIRMED.