REQUESTED BY: Dear Senator Cullan:
You have asked whether a provision in LB 172 requiring a certificate of need before a health care facility can be leased or sold to a new owner is constitutional. We have concluded it probably is constitutional.
You point out that if such a certificate were denied, the owner would have to continue to operate the facility although it may not wish to do so, close the facility, or sell it for use other than as a health care facility. You suggest that the owner could thus be kept from realizing the increased value of its property, depriving it of property without adequate compensation.
The Nebraska Supreme Court dealt with a similar problem in Beisner v. Cochran, 138 Neb. 445, 293 N.W. 289 (1940). The suit was brought by persons who had specially equipped their garages to inspect motor vehicles as required by law. They claimed the state had destroyed the value of that equipment, thus taking their property without just compensation and in violation of due process, by passing a new law with more rigorous requirements for the vehicles and providing that inspections were to be made in authorized official inspection stations. The court held that no one has a vested right to be protected against consequential injuries arising from a proper exercise of public powers:
 ". . . The applicable rule is well stated in Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205, as follows: `A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit. Such legislation does not disturb the owner in the control or use of his property for lawful purposes, nor restrict his right to dispose of it, but is only a declaration by the state that it use by any one, for certain forbidden purposes, is projudicial to the public interests. Nor can legislation of that character come within the Fourteenth Amendment, in any case, unless it is apparent that its real object is not to protect the community, or to promote the general well-being, but, under the guise of police regulation, to deprive the owner of his liberty and property, without due process of law. The power which the states have of prohibiting such use by individuals of their property as will be prejudicial to the health, the morals, or the safety of the public, is not and, consistently with the existence and safety of organized society, cannot be burdened with the condition that the state must compensate such individual owners for pecuniary losses they may sustain, by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community. . . .'" (138 Neb. at 448.)
One objective of LB 172 is to maximize the effectiveness of expenditures made for health care. To require review of the proposed transfer of a health care facility seems reasonably related to this purpose when, as we are advised, the public pays for depreciation costs, such costs begin anew when a facility is transferred and the greater the transfer price the greater the depreciation allowable to the new owner. Accordingly, we have concluded that requiring a certificate of need before a health care facility can be transferred to a new owner for use as such a facility is a proper exercise of the police power of the state. It is not a denial of due process or a taking of private property without just compensation.