In the Matter of the Application of **SKJONSBY TRUCK LINE, INC.,** Fargo, North Dakota, to Sell and **Morgan Drive-Away, Inc.,** Elkhart, Indiana, To Buy a Portion of Special Certificate of Public Convenience and Necessity No. 641.

**BARRETT MOBILE HOME TRANSPORT, INC., Plaintiff and Appellant,**

v.

**SKJONSBY TRUCK LINE, INC., and Morgan Drive-Away, Inc., Defendants and Appellees.**

Civ. No. 10674.

Supreme Court of North Dakota.

Oct. 30, 1984.

Rosenberg & Baird, Bismarck, for plaintiff and appellant; argued by LaRoy Baird, III, Bismarck.

Van Osdel, Foss & Miller, Fargo, for defendants and appellees; argued by Michael E. Miller, Fargo.

Daniel S. Kuntz, Asst. Atty. Gen., North Dakota Public Service Commission, Bismarck, for Public Service Commission.

Hanson, Crockett & Anderson, Fargo, for applicant.

ERICKSTAD, Chief Justice.

Barrett Mobile Home Transport, Inc. [Barrett] appeals from a district court judgment affirming an order of the North Dakota Public Service Commission [PSC] which approved an application by Skjonsby Truck Line, Inc. [Skjonsby] to transfer a part of its motor carrier authority to Morgan Drive-Away, Inc. [Morgan]. We affirm.

Skjonsby possesses Special Certificate of Public Convenience and Necessity No. 641, which, in relevant part, authorizes Skjonsby to transport:

"(4) Factory-manufactured buildings or sections of buildings, not including stick-built buildings: Between points in North Dakota."

On December 15, 1982, Skjonsby filed an application with the PSC to sell, and Morgan to purchase, a part of the authority it held under paragraph four of its certificate. Skjonsby proposed to transfer to Morgan the authority to transport:

" 'Factory manufactured buildings or sections of buildings, not including stick built buildings, except those transported

on ordinary flat-bed or lowboy trailers: Between points in North Dakota.' "

Skjonsby proposed to retain the authority to transport:

" 'Factory manufactured buildings or sections of buildings, not including stick built buildings, when transported on ordinary flat-bed or lowboy trailers: Between points in North Dakota.' "

On August 18, 1983, a hearing was held and appearances were entered on behalf of Skjonsby, Morgan and Barrett. On October 21, 1983, the PSC issued its findings of fact, conclusions of law and order approving the application.

The PSC found as facts that: (1) Skjonsby has conducted operations under the part of the certificate to be sold "both in tow-away service and in the transportation of buildings on trailers which are two distinct, and mutually exclusive, types of service;" (2) although Skjonsby has provided such service "only to a limited extent, it has held itself out to perform such service in the form of filing appropriate tariffs and there is no evidence that it has refused to perform such service on any occasion;" (3) Skjonsby is operating under Chapter 11 of the Bankruptcy Act which has limited its operations, and approval of the application "would improve its financial ability to continue its operations;" (4) Morgan possesses the necessary equipment, personnel, finances and facilities and is thus "fit, willing and able to provide the proposed transportation service;" (5) Barrett holds authority to provide service substantially as contained in the part of the certificate sought to be transferred and "fears diversion of traffic if this application is granted;" and (6) division of paragraph four of Skjonsby's certificate "will be consistent with the public interest and Public Convenience and Necessity require the granting of this application."

Barrett appealed from the PSC's order to the district court, which affirmed the PSC's decision. Barrett now appeals from that judgment.

Barrett asserts on appeal that the PSC erred in approving Skjonsby's application because: (1) the PSC has no statutory authority to approve a transfer of only a part of a certificate of public convenience and necessity; (2) the PSC did not consider all of the factors set forth in § 49–18–14, N.D. C.C.; (3) the PSC's finding that Skjonsby conducted two distinct and mutually exclusive types of service is not supported by a preponderance of the evidence; (4) the PSC's finding that a division of Skjonsby's authority will be consistent with the public interest and public convenience and necessity is not supported by a preponderance of the evidence; and (5) Skjonsby has abandoned the authority it seeks to transfer to Morgan.

■ In an appeal from a decision of an administrative agency, we review the decision of the administrative agency rather than the decision of the district court, and look to the record compiled by the agency. *Garner Public School v. Golden Valley County Committee,* 334 N.W.2d 665, 671 (N.D.1983); *Application of Nebraska Public Power Dist.,* 330 N.W.2d 143, 146 (N.D. 1983). Our review of an administrative agency decision involves a three-step process whereby we determine whether or not the findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law. *Appeal of Dickinson Nursing Center,* 353 N.W.2d 754, 757 (N.D.1984); *Grant Farmers Mutual v. State by Conrad,* 347 N.W.2d 324, 326 (N.D.1984); § 28–32–19, N.D.C.C. We do not make independent findings of fact or substitute our judgment for that of the qualified experts in the administrative agency, but determine only whether or not a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record. *Appeal of Dickinson Nursing Center, supra; Application of Nebraska Public Power Dist., supra; Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 220 (N.D.1979).

■ Administrative agency decisions on questions of law are fully reviewable by our Court. *Appeal of Dickinson Nursing Center, supra; Grant Farmers Mutual, supra.* An agency's interpretation of a certificate of authority issued by it is generally treated with deference by the courts and is not set aside unless the interpretation is unreasonable, arbitrary or capricious. *Skjonsby Truck Line, Inc. v. Elkin,* 325 N.W.2d 271, 274 (N.D.1982).

Barrett initially contends that the PSC has no power to transfer only a part of the authority granted in a certificate of public convenience and necessity. Section 49–18–26, N.D.C.C., provides in pertinent part that a "certificate or permit shall be transferable only upon approval by the commission, after opportunity for hearing, giving notice to all interested parties; ..."

■ Although § 49–18–26, N.D.C.C., neither expressly authorizes nor specifically prohibits a partial transfer of a certificate of public convenience and necessity, we have stated that "the practical construction of a statute by the agency administering the law is entitled to some weight in construing the statute, especially where the agency interpretation does not contradict clear and unambiguous statutory language." *Clapp v. Cass County,* 236 N.W.2d 850, 856 (N.D.1975). *See also In re Dilse,* 219 N.W.2d 195, 200 (N.D.1974); *State Tax Commissioner v. Tuchscherer,* 130 N.W.2d 608, 615 (N.D.1964).

■ We find unpersuasive Barrett's argument that the PSC has no authority to approve partial transfers. In *Hentz Truck Line, Inc., Etc. v. Elkin,* 294 N.W.2d 774, 778 (N.D.1980), we indicated that if the evidence established that only a part of a certificate had been abandoned, the certificate could be amended in a transfer proceeding under § 49–18–26, N.D.C.C. Courts in several other jurisdictions have held that it is within the power of an administrative agency to permit division of a motor carrier certificate into two or more parts and to approve the sale of less than all of the parts. *See Eagle Motor Lines v. Alabama Public Service Com'n,* 343 So.2d 767 (Ala.1977); *Houston & North Texas Motor Freight Lines v. Johnson,* 140 Tex. 166, 166 S.W.2d 78 (1942); *State v. Washington Public Service Commission,* 54 Wash.2d 382, 340 P.2d 784 (1959). *See generally* Annot., 15 A.L.R.2d 883, § 5 (1951 and Later Case Service). *But see Braddock v. Public Utilities Commission,* 137 Ohio St. 59, 27 N.E.2d 1016 (1940).

We agree with the rationale of the Texas Supreme Court in *Houston & North Texas Motor Freight Lines, supra,* 140 Tex. at 169–170, 166 S.W.2d at 80:

"Since the Commission by this Act is vested with full authority to grant such certificates and to approve the sale thereof, and to supervise and regulate motor carriers for the purposes and to the extent above provided for, we see no reason why it should not be held that it has authority, under the above Act, to permit the division of the route covered by a certificate into two or more parts and the sale of a portion thereof to a third party. In other words, if the Commission had the authority in the first instance to have granted one certificate ... we see no reason why, under the broad powers embodied in the foregoing Act, it should not be permitted upon request of the owner to divide the certificate previously granted, and to permit sale of portions thereof to different purchasers."

We therefore conclude that the PSC has the authority to approve a division and transfer of a part of the authority granted in a certificate of public convenience and necessity.

Barrett also asserts that the PSC erred in approving the transfer without taking into consideration all of the factors outlined in § 49–18–14, N.D.C.C., which provides:

"*49–18–14. Factors to be considered by commission in granting certificate.* Before granting a certificate to a common motor carrier, the commission shall take into consideration:

1. The need for service proposed by the applicant;

2. The increased cost of maintaining the highway concerned;

3. The effect on other existing transportation facilities;

4. The fitness and ability of applicant to provide service;

5. Adequacy of proposed service; and

6. Such other information as the commission may deem appropriate.

If the commission finds that the transportation to be authorized by the certificate is not consistent with the public convenience and necessity the commission shall not grant such certificate."

■ We do not believe it was the intent of the Legislature when it enacted the transfer statute to require the PSC, as a prerequisite to authorizing a transfer, to follow all of the requirements and procedures applicable to the granting of a new application for a certificate. All of the factors set forth in § 49–18–14, N.D.C.C., including the need for the service itself, were previously considered by the PSC when the original certificate was issued to Skjonsby. To adopt Barrett's argument that upon every application for a transfer of an existing certificate, the PSC must specifically consider all of the factors in § 49–18–14, N.D.C.C., would render the transfer statute meaningless.

■ We conclude, as have courts in many other jurisdictions, that an independent determination of each of the factors of public convenience and necessity is not required in a transfer proceeding so long as the PSC prevents the expansion of old services, the revival of dormant rights, or the creation of dual authorities from the single authority being sold. See Bradley v. United States, 322 F.Supp. 369 (D.Alaska 1971); Bowman Transportation, Inc. v. United States, 308 F.Supp. 1342 (N.D.Ala.1970); Churchill Truck Lines v. Transportation Regulation Board, Etc., 274 N.W.2d 295 (Iowa 1979); Spector Freight System, Inc. v. Herman Bros., 197 Neb. 835, 251 N.W.2d 376 (1977); Application of Transit Homes, Inc., 173 Neb. 391, 113 N.W.2d 638 (1962); Application of Transport, Inc. of South Dakota, 75 S.D. 340, 64 N.W.2d 313

(1954); Tarry Moving & Storage Co. v. Railroad Commission, 367 S.W.2d 322 (Tex.1963). The PSC's inquiry in a transfer proceeding should be directed to whether or not the proposed transfer would be in the public interest, and only those specific factors in § 49–18–14, N.D.C.C., which cannot be presumed to have been determined when the original certificate was issued, such as the fitness and ability of the transferee, need be considered. See Churchill Truck Lines, supra; Application of Transit Homes, Inc., supra; Tarry Moving & Storage Co., supra. As the South Dakota Supreme Court stated in Application of Transport, Inc. of South Dakota, supra, 75 S.D. at 344, 64 N.W.2d at 315: "[I]n the absence of proof to the contrary, the assumption is warranted that public convenience and necessity require continuation of the services previously authorized."

Barrett next asserts the PSC's finding that Skjonsby conducted two distinct and mutually exclusive types of service is not supported by a preponderance of the evidence, and therefore its approval of the transfer created dual authorities arising from a single operating right. We disagree.

■ The record discloses that Skjonsby had transported "factory-manufactured buildings" by two methods, depending upon the design of the building to be transported. When the building was constructed with its own undercarriage, it was towed to the residential site and, in most instances, the undercarriage was left with the building. The other type of building, which was not built with its own undercarriage, was loaded onto trailers and hauled to the residential site where it was unloaded from the trailer. The evidence also reveals that it would be economically unfeasible or impractical to attempt to transport by one manner a building designed to be transported by another manner. The evidence indicates that whether or not a "factory-manufactured building" is towed or loaded on a trailer and hauled, is not merely a matter of choice or convenience of the carrier, but is dictated by the design and

construction of the building itself. We conclude that the PSC's finding that Skjonsby's tow-away service and its transportation of buildings on trailers are two distinct and mutually exclusive types of service is supported by a preponderance of the evidence, and that dual authorities did not arise as a result of the transfer.

Barrett also contends that the PSC's finding that the transfer was consistent with the public interest and public convenience and necessity is not supported by a preponderance of the evidence because the PSC failed to consider each of the specific factors set forth in § 49–18–14, N.D.C.C. As noted earlier herein, all of the factors in § 49–18–14, N.D.C.C., need not be considered in a transfer proceeding under § 49–18–26, N.D.C.C., if no new services are created. The finding that the transfer is consistent with the public interest is amply supported by the record.

Finally, relying principally on this Court's decisions in *Dan Dugan Transport Co. v. Maas Transport*, 275 N.W.2d 855 (N.D.1979), and *Hentz Truck Line, Inc., Etc. v. Elkin*, 294 N.W.2d 774 (N.D.1980), Barrett asserts that the PSC erred in approving the transfer application because Skjonsby had abandoned its tow-away authority.

In *Dan Dugan Transport Co., supra*, we held that a common motor carrier's nonuse of authority, accompanied by its inability to render services to the public, justified the PSC's conclusion that a certificate had been abandoned. We also noted in that decision that a demand for services and refusal by the carrier to transport a tendered shipment is not a prerequisite to a finding of abandonment. In *Hentz Truck Line, Inc., supra*, we upheld the PSC's finding of abandonment where the record was devoid of any evidence of an attempt on the part of the carrier to hold itself out to the public in the area it was authorized to serve under the certificate, and where the evidence revealed that the carrier had no equipment, no terminal, no salesman, and no listed telephone number in its principal place of authority.

These cases are distinguishable from the present case. The record reflects that Skjonsby has maintained equipment, personnel, and terminal facilities in its area of authority, and has held itself out as willing to provide tow-away service. The evidence also reveals that Skjonsby did in fact provide tow-away service as late as 1982, before filing its transfer application. We conclude that there is sufficient evidence in the record to establish that Skjonsby had not abandoned its tow-away service.

We have reviewed the record in this case and conclude that the PSC's findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law.

The judgment is affirmed.

SAND, GIERKE and PEDERSON, JJ., and MUGGLI, Surrogate Judge, concur.

MUGGLI, Surrogate Judge, sitting in place of VANDE WALLE, J., disqualified.

PEDERSON, Justice, concurring specially.

In the light of present law, precedent and tradition, the opinion authored by Chief Justice Erickstad is sound and reaches the correct conclusion. I believe that the law ought to be changed so that more reasonable results for the public can be expected in the future.

Counsel for Skjonsby says that a Certificate of Authority is a property right and counsel for the PSC says the public interest is advanced by permitting a transfer of a part of a Certificate of Authority. To the extent that I understand either of them, I disagree. If the sale of a partial authority can save Skjonsby from bankruptcy, maybe the public ought to benefit from that sale.